IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| JAMES EVERARD, and § <br> CHRISTOPHER GRISHAM § <br> § <br> *Plaintiffs* § <br> § <br> vs. § <br> § <br> RENE VALENCIANO, and § <br> CITY OF OLMOS PARK § <br> § <br> *Defendants.* § <br> § | Case No.: 5:21-cv-00983 |

## COMPLAINT AND JURY DEMAND

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiffs James Everard and Christopher Grisham ("Plaintiffs"), by and through their attorneys, complain of Defendants and respectfully allege as follows:

### I.   JURISDICTION AND VENUE

1. This is a civil rights action in which Plaintiffs seek relief for the violation of their rights secured by 42 U.S.C. 1983 and the First Amendment of the United States Constitution.

2. Jurisdiction of this Court is found upon 28 U.S.C. § 1331 since this action arises under the Constitution and the laws of the United States.

3. Venue is proper in the Untied States District Court for the Western District of Texas because the majority of events complained of occurred in this district.

4. Pursuant to 42 U.S.C. § 1983, and other applicable laws, the Court may award nominal, compensatory, and punitive damages, as well as equitable relief against Defendants for

1

the violations of Plaintiffs' Constitutional rights and harm caused by Defendants' action and inaction.

## II.     PARTIES

1. Plaintiff, JAMES EVERARD ("Plaintiff" or "Mr. Everard") is a law-abiding citizen of the State of Texas.

2. Plaintiff, CHRISTOPHER GRISHAM ("Plaintiff" or "Mr. Grisham"), is a law-abiding citizen of the State of Texas.

3. Defendant, RENE VALENCIANO is a Texas resident and at all times relevant to this complaint, was the Chief of Police for the City of Olmos Park Police Department.

4. Defendant, CITY OF OLMOS PARK, is a municipality in the State of Texas.

## III.     FACTUAL ALLEGATIONS

5. In February 2018, Chief Valenciano became aware that open carry activists publicly opposed the City of Olmos Park's ordinance banning the open carry of rifles. Activists alleged the ordinance was inconsistent with state law.

6. Chief Valenciano opposed the viewpoint that the ordinance was unlawful and chose to prepare a PowerPoint presentation that was provided to law enforcement officials on local, state, and federal levels. The PowerPoint compared open-carry activists to mass-murders and cop killers.

7. On March 1, 2018, Chief Valenciano made his presentation to many law enforcement officials on local, state, and federal levels. On March 5, 2018, he disseminated this information to many other local, state, and federal law enforcement agencies.

8. Chief Valenciano emphasized in the PowerPoint that there was at least one open-carry protest planned within the City of Olmos Park. He likely wanted to put law enforcement agencies on alert to the potential protests with alleged mass-murders and cop killers.

9. Weeks after providing the PowerPoint to many law enforcement entities—including the FBI and Secret Service—Plaintiff CJ Grisham emailed Defendant City and then called Defendant Chief to inform them that their handling of open-carry individuals violated the law, and that he would be protesting within the City.

10. On March 27, 2018, Plaintiffs were open carrying firearms in the City of Olmos Park and were protesting the ordinance. Defendant Chief learned before arriving at the scene from dispatch that it was "the Second Amendment" people. Defendant Chief arrived on scene, and within seconds, fired his taser at Plaintiff Grisham, arrested him, and arrested Plaintiff Everard.

11. During this incident, Plaintiffs informed Chief Valenciano that a lawsuit would be forthcoming.

12. On March 29, 2018, the City of Olmos Park and other local governments removed ordinances pertaining to open carrying rifles that were inconsistent with state law.

13. In April 2018, Defendants learned that prosecutors declined to prosecute Plaintiffs as all charges brought were dismissed within weeks.

14. Chief Valenciano recognized his credibility was on the line, so he wanted to do everything within his authority to also ruin Plaintiffs' credibility.

15. Despite charges being dismissed, Chief Valenciano solicited, gathered, and collected private information, historical data, and other information from various sources. He obtained the type of information that is usually only available to law enforcement agencies for a lawful purpose.

16. Chief Valenciano continued to build a dossier on Plaintiffs without any legitimate purpose other than to deter them from continuing to engage in their constitutionally protected conduct.

17. Chief Valenciano portrayed Plaintiff Grisham as being the center of a web of "agitators."

18. Chief Valenciano highlighted that Plaintiffs (lawfully) purchased guns (all after the charges were dismissed).

19. Chief Valenciano, in his official capacity, shared this information with Defendant City and law enforcement agencies on local, state, and federal levels.

20. Chief Valenciano sought to negatively impact Plaintiffs by causing possible investigations and creating a false perception of Plaintiffs that would impact future interactions between Plaintiffs and law enforcement.

21. Chief Valenciano knew that Plaintiffs interact with law enforcement officials, and that Plaintiffs regularly protest unlawful activity and prosecute claims arising from constitutional violations. Chief Valenciano wanted Plaintiffs to stop—especially when his credibility was implicated from the incidents surrounding March 27, 2018.

22. On March 26, 2020, Plaintiffs filed a lawsuit against Defendants and other officers alleging violations under 42 U.S.C. § 1983 stemming from the March 27, 2018, incident (the "first lawsuit").[1]

23. Chief Valenciano recognizing that the first lawsuit was coming, did, in both his individual and official capacity, used resources available to him only in his official capacity as the

---

[1] *Christopher Grisham and James Everard v. Rene Valenciano, J. Lopez, Hector Ruiz, A. Vera, and the City of Olmos Park*, Case No. 5:20-cv-00387-OLG, filed in the United States District Court in the Western District of Texas, San Antonio Division.

Chief of Police, and with the consent or deliberate indifference from the City of Olmos Park, continued to put forth efforts to chill Plaintiffs' First Amendment right to petition for redress of grievances.

24. Without any lawful basis, in response to recognizing that Plaintiffs were going to file a lawsuit (and then did so), Defendants conducted or caused to be conducted investigations into Plaintiffs, their known associates, and one or more of their civil rights attorneys.

25. Defendants gathered private information such as social security numbers, dates of birth, location information, financial transaction records, and even obtained photographs and videos of Plaintiffs at various locations—all without any legitimate or lawful basis.

26. This information was gathered after Defendants unlawfully represented that the information was for an official purpose. However, the sole reason Defendants gathered this information was to target Plaintiffs and to retaliate against them for planning to file, and then filing the first lawsuit against Defendants.

27. Defendant Valenciano's conduct went beyond gathering private information. Defendants repeatedly presented and shared this private information with local, state, and federal law enforcement agencies.

28. Defendant Valenciano's dossier, as of May 2021, grew to at least 160 pages.

29. Defendant Valenciano repeatedly labelled Plaintiffs as anti-government individuals, agitators, and sovereign citizens.

30. Defendant Valenciano went through great lengths to compare Plaintiffs to mass murderers and cop killers. Defendant Valenciano also suggested that Plaintiffs are linked to various criminals.

31. Defendant Valenciano repeatedly presents and shares his version of findings and conclusions with law enforcement agencies on the local, state, and federal levels.

32. Defendant Valenciano's purpose for going after Plaintiffs in this manner was to attempt to get different agencies to initiate investigations against Plaintiffs, and to punish Plaintiffs for filing the lawsuit against them.

33. Defendant Valenciano's other purpose is to negatively influence future law enforcement interactions with Plaintiffs. Defendant Valenciano's unlawful collection of information and improper and incorrect portrayal of Plaintiffs as potential mass murders and cop killers absolutely impacts Plaintiffs' ability to peacefully protest as they have done in the past.

34. Defendants' conduct would chill a person of ordinary firmness from continuing to engage in similar First Amendment activity, and Defendants' adverse actions were substantially motivated by the constitutionally protected conduct.

### IV.  CLAIMS AGAINST DEFENDANTS

### COUNT I
### VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. 1983
### (First Amendment – Retaliation for Protected Conduct)

35. Plaintiffs restate and incorporate by reference each and every allegation set forth in all prior paragraphs.

36. At all times relevant, Defendant Chief Valenciano was acting under color of State law.

37. Plaintiffs have a First Amendment right to peacefully protest and petition for redress of grievances.

38. Plaintiffs were engaging in constitutional protected conduct of petitioning for redress of grievances.

39. In retaliation for engaging in protected conduct, Defendant Valenciano targeted Plaintiffs in vast unlawful investigations; labeled Plaintiffs to other local, state, and federal law enforcement agencies as anti-government, agitators, and being on par with mass murders and cop killers; unlawfully and without any lawful or other legitimate basis, collected private data and surveillance on Plaintiffs, known associates, and their attorneys; and attempted to get other law enforcement agencies to initiate or assist in unlawful investigations into Plaintiffs, and to impact future law enforcement interactions with Plaintiffs.

40. At all relevant times, Defendant Valenciano was required to obey the laws of the United States.

41. Defendant Valenciano's actions caused Plaintiffs to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity.

42. Defendant Valenciano's adverse actions was substantially motivated by Plaintiffs petitioning the government for redress of grievances.

43. Defendant Valenciano had (and has) his credibility on the line, and will do whatever necessary to make sure Plaintiffs are negatively impacted as a result of filing the first lawsuit against him.

44. Defendant Valenciano intentionally, knowingly, maliciously, reckless, unreasonably, and grossly negligently retaliated against Plaintiffs for engaging in protected conduct.

45. As a direct and proximate result of Defendant Valenciano's unlawful actions, Plaintiffs were harmed.

## COUNT II
## MUNICIPAL LIABILITY 42 U.S.C. 1983

46. Defendant Valenciano's actions, and the actions of the City of Olmos Park,

demonstrate a policy, practice, or custom to retaliate against Plaintiffs and other open carry activists for engaging in their protected First Amendment activity. Defendants' actions and inactions constitute an impermissible policy, practice, or custom that deprive Plaintiffs of their right to be free from retaliation for protected conduct.

47. At all relevant times, Plaintiffs had a clearly established right to be free from unlawful policies, practices, and customs, as well as a right to petition for redress of grievances.

48. Defendant City was aware of Chief Valenciano's retaliatory conduct and did nothing to prevent it. Defendant City showed a deliberate indifference for the constitutional rights of Plaintiffs and other open carry activists.

49. Defendant City had a copy of one or more versions of Chief Valenciano's dossier, but did nothing to stop his conduct.

50. Defendant City was regularly briefed by Chief Valenciano on his unlawful data gathering, but did nothing to stop his conduct.

51. The City showed a deliberate indifference and ratified Chief Valenciano's conduct.

52. As a direct and proximate result of Defendant City's unlawful actions, Plaintiffs were harmed.

## COUNT III
## DECLARATORY RELIEF

53. Plaintiffs reallege the material facts alleged in the preceding paragraphs against Defendants. Defendants deprived Plaintiffs of their federal constitutional rights to freedom of expression without the fear of retaliation, causing irreparable harm to Plaintiffs. Through continued application and enforcement of their policies, practices, and custom, written or unwritten, that seek to collect, retain, and surveil law-abiding citizens for no lawful purpose or practice, Defendants threaten further violations of these same rights. Plaintiffs are thus entitled to

a declaration pursuant to 28 U.S.C. §2201 that his rights arising under the Constitution have been violated by the actions of the Defendants and their policies, practices, and custom, written or unwritten, that seek to collect, retain, and surveil law-abiding citizens for no lawful purpose or practice—are facially unconstitutional and unconstitutional as applied to the activities of Plaintiffs.

### COUNT IV
### INJUNCTIVE RELIEF

54. Plaintiffs reallege the material facts alleged in the preceding paragraphs against Defendants. Plaintiffs continue to be deprived of his federal constitutional rights under the First Amendment, causing him irreparable harm and threatening additional, immediately impending irreparable injuries. Defendants, in an ongoing manner, violate Plaintiffs' Constitutional rights by maintaining their policies, practices, and custom of collecting, retaining, and surveilling Plaintiffs and individuals who lawfully exercise their First Amendment rights, and then portraying this information with other law enforcement agencies to cause harm to Plaintiffs and attempt to deter them from engaging in constitutionally protected activities, which is in violation of 42 U.S.C. § 1983.

55. Plaintiffs are thus entitled to an injunction preventing Defendants from further enforcement of their policies, practices, and custom, written or unwritten, that seek to collect, retain, and surveil law-abiding citizens for no lawful or other legitimate purpose or practice that is only sought to deter constitutionally protected activities. Defendants should be enjoined from using their policies, practices, and custom, written or unwritten, surveil Plaintiffs, collect personal information on Plaintiffs, or retain personal information of Plaintiffs, if they are not committing any crime and otherwise following all ordinances, statutes, and law.

### ATTORNEY'S FEES AND COSTS

56. It was necessary for Plaintiffs to hire the undersigned attorneys to file this lawsuit.

Plaintiffs seek the recovery of attorneys' fees incurred in the pursuit of this action pursuant to 42 U.S.C. §1988(b) and expert fees pursuant to 42 U.S.C. §1988(c). Plaintiffs also seek recovery of their expenses and costs of court pursuant to 28 U.S.C. §1920.

57. As a direct and proximate result of the Defendants' conduct, Plaintiffs suffered damages for violations of the First Amendment including retaliation for petitioning the government for the redress of grievances.

## JURY DEMAND

58. Plaintiff hereby demands a trial by jury of all triable issues, per Fed. R. Civ. P. 38(b).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, Christopher Grisham and James Everard, demands judgment and pray for the following relief, against Defendants, either individually or jointly, and severally:

    a. A Declaration that Defendants' conduct, policies, practices, and custom, written or unwritten, that seek to collect, retain, and surveil law-abiding citizens for no lawful purpose or practice, and then share this information with others, is in retaliation for exercising their Constitutional rights, violate the First Amendment to the United States Constitution;

    b. Injunctive relief barring Defendants conduct and from maintaining their policies, practices, and custom of collecting, retaining, and surveilling Plaintiffs and individuals who lawfully exercise their First Amendment rights, and then sharing this information without any lawful or legitimate purpose, which is in violation of 42 U.S.C. § 1983;

    c. Nominal Damages for retaliation by Defendants for Plaintiffs' exercise of their First Amendment rights of free expression and petitioning for the redress of grievances,

as the Court finds appropriate, from one or more Defendants;

d. Punitive damages from one or more Defendants;

e. Pre-judgment and post-judgment interest from one or more Defendants;

f. Reasonable attorney's fees and costs of this action; and

g. Any such other relief as appears just and proper.

Respectfully Submitted,

**GRABLE GRIMSHAW MORA PLLC**

*/s/ Brandon J. Grable*
**BRANDON J. GRABLE**
Texas State Bar No. 24086983
brandon@ggm.law
**AUSTIN M. REYNA**
Texas State Bar No. 24118645
austin@ggm.law
1603 Babcock Road, Suite 280
San Antonio, Texas 78229
Telephone: (210) 963-5297
Facsimile: (210) 641-3332