UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

**CHRISTOPHER JOHN GRISHAM,**
**JAMES EVERARD,**

   *Plaintiffs***,**

**v.**

                                                  Case No.  SA-21-CV-00983-JKP

**RENE VALENCIANO, CITY OF**
**OLMOS PARK,**

   *Defendants***.**

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants Rene Valenciano and the City of Olmos Park's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and Motion for Judgment on the Pleadings pursuant to Rule 12(c), Plaintiffs James Everard and Christopher John Grisham's Response, and the Olmos Park Defendants' Reply to the Response. ECF Nos. 29, 30, 32. The motion is ripe and ready for ruling. After considering the parties' briefings and the applicable law, the Court **DENIES** the Defendants' Motion to Dismiss, **GRANTS** the Defendants' Motion for Judgment on the Pleadings (ECF No. 29), and **DISMISSES** the case with prejudice. Final judgment will be entered by separate order.

### BACKGROUND

This case arises from a dispute between gun rights activists Grisham and Everard and Olmos Park Police Chief Valenciano. In a related case, Grisham and Everard sued Chief Valenciano, the City of Olmos Park, and other officers under 42 U.S.C. § 1983, alleging officers violated the activists' civil rights by arresting them during a March 27, 2018 protest of the city's

firearms ordinance. *See Grisham and Everard v. Valenciano et al.*, Case No. 5:20-cv-00387-OLG. On that date, officers responding to 911 reports of an armed man standing on a street corner encountered Everard wearing a rifle strapped across his chest. Other protesters stood nearby, some of whom were filming Everard's interactions with police. When officers asked Everard to get on the ground, Everard refused. Then Grisham, who was wearing a handgun on his hip, approached Everard, filming the scene. Officers instructed Grisham to get away from Everard and, after exchanging words, the officers tased Grisham and arrested both men. During their arrest, the plaintiffs told officers they planned to file a lawsuit.

Grisham and Everard then sued in federal court, asserting § 1983 claims against the officers under the First Amendment, Fourth Amendment, and Fourteenth Amendment Due Process Clause. They also alleged bystander liability against the officers and policy-based liability of the city. On July 22, 2022, U.S. Magistrate Judge Henry J. Bemporad, to whom the matter was referred, issued a Report and Recommendation recommending summary judgment in favor of the defendants on all counts. U.S. District Judge Orlando Garcia adopted Judge Bemporad's R&R, and on September 20, 2022 the case was dismissed.

In the case before this Court, Grisham and Everard raise separate, but related allegations. During discovery in the first case, Grisham and Everard became aware Chief Valenciano had prepared an approximately 160-page file on them, and shared information he collected with local, state, and federal law enforcement agencies. Grisham and Everard allege Chief Valenciano collected and shared the information in retaliation for their constitutionally protected protest activity. Specifically, they say he characterized them as cop killers and mass murderers associated with the group Open Carry Texas, in an attempt to harm their reputation with law enforcement. They further allege, based on Chief Valenciano's actions, the City of Olmos Park

adopted an impermissible policy, practice, or custom of retaliation against activists such as themselves. They seek nominal and punitive damages, pre- and post-judgment interest, and recovery of attorneys' fees incurred.

On December 23, 2021, the Olmos Park Defendants filed their first motion to dismiss this action, pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1). ECF No. 5. The Court denied the motion as untimely, granting the defendants leave to file an answer and directing the parties to the Court's standing order, which requires a 12(b)(6) movant to confer with opposing counsel and give them an opportunity to amend their pleading before filing a 12(b)(6) motion to dismiss. ECF No. 17. The Olmos Park Defendants followed that procedure, and conferred with Grisham and Everard, who then amended their complaint. ECF No. 25. Now, the Olmos Park Defendants bring a new motion to dismiss and motion for judgment on the pleadings, pursuant to Rules 12(b)(1) and 12(c). ECF No. 29. They argue this Court lacks jurisdiction because Grisham and Everard are trying to relitigate issues raised in their case before Judge Garcia. They further argue the amended complaint fails to plead sufficient factual allegations to support a plausible claim for relief. For the reasons discussed herein, the Court finds it does have jurisdiction over this matter, however, the plaintiffs failed to state a claim upon which relief can be granted.

## LEGAL STANDARD

### I. Rule 12(b)(1) Motion to Dismiss for Lack of Jurisdiction

Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal of a case for lack of subject matter jurisdiction when the district court lacks statutory and constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). If a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the Court

will consider the jurisdictional attack under Rule 12(b)(1) before addressing any attack on the legal merits. *Ramming v. United States*, 281 F.2d 158, 161 (5th Cir. 2001).

The jurisdiction of federal courts is circumscribed by the limits set forth in Article III of the Constitution. *Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 471 (1982). Article III legitimizes the use of judicial power "to declare the rights of individuals and to measure the authority of governments" in the resolution of "cases" and "controversies." *Id*. For that reason, a federal court must dismiss a case for lack of subject matter jurisdiction if the court lacks "the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss.*, 143 F.3d at 1010 (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir.1996)). A court "must presume that a suit lies outside [its] limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). The Fifth Circuit has long held that, under Federal Rule 12(h)(3), the federal courts "have the responsibility to consider the question of subject matter jurisdiction sua sponte if it is not raised by the parties and to dismiss any action if such jurisdiction is lacking." *Giannakos v. M/V Bravo Trader*, 762 F.2d 1295, 1297 (5th Cir. 1985).

II.     **Rule 12(c) Motion for Judgment on the Pleadings**

Federal Rule 12(c) provides: "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." A motion filed pursuant to Federal Rule 12(c) "may dispose of a case when there are no disputed material facts and the court can render a judgment on the merits based on 'the substance of the pleadings and any judicially noted facts.'" *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 734 (5th Cir. 2019) (quoting *Linicomn v. Hill*, 902 F.3d 529, 533 (5th Cir. 2018)). A Federal Rule 12(c) motion is

subject to the same legal standard and analysis as a motion to dismiss filed pursuant to Federal Rule 12(b)(6). *Id*. (citing *Doe v. Myspace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008)).

To warrant dismissal under Federal Rule 12(b)(6), a complaint must, on its face, show a bar to relief or demonstrate "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Fed. R. Civ. P. 12(b)(6); *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986). Dismissal "can be based either on a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Frith v. Guardian Life Ins. Co.*, 9 F. Supp.2d 734, 737–38 (S.D.Tex. 1998). "Thus, the court should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint." *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999); *Vander Zee v. Reno*, 73 F.3d 1365, 1368 (5th Cir. 1996).

To survive a Federal Rule 12(b)(6) motion, a plaintiff does not need to provide detailed factual allegations but must provide grounds of his entitlement to relief. This pleading requirement necessitates "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Therefore, the Court's task is to identify the elements of a cause of action and then determine whether the plaintiff pled sufficient factual allegations in support of the asserted elements to state a plausible claim, and thereby, survive a motion to dismiss. *Cicalese v. Univ. of Tex. Med Branch*, 924 F.3d 762, 766–67 (5th Cir. 2019).

In assessing a motion to dismiss under Federal Rule 12(b)(6), the Court's review is limited to the Complaint and any documents attached to the Motion to Dismiss, which are also referred to in the Complaint and central to the plaintiff's claims. *Brand Coupon Network*,

5

*L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014). When reviewing the Complaint, the "court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188 F.3d at 324).

A Complaint should only be dismissed under Federal Rule 12(b)(6) after affording ample opportunity for the plaintiff to state a claim upon which relief can be granted, unless it is clear amendment would be futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Hitt v. City of Pasadena*, 561, F.2d 606, 608–09 (5th Cir. 1977); *DeLoach v. Woodley*, 405 F.2d 496–97 (5th Cir. 1968). Consequently, when it appears a more careful or detailed drafting might overcome the deficiencies on which dismissal is sought, a court must allow a plaintiff the opportunity to amend the Complaint. *Hitt*, 561 F.2d at 608–09. A court may appropriately dismiss an action with prejudice without giving an opportunity to amend if it finds the plaintiff alleged his best case or if amendment would be futile. *Foman*, 371 U.S. at 182; *DeLoach*, 405 F.2d at 496–97.

## ANALYSIS

**I.      Rule 12(b)(1) Motion to Dismiss for Lack of Jurisdiction**

The Olmos Park Defendants advance no legal theory for why the Court lacks jurisdiction over this matter. Instead, they argue the Court should dismiss the case because Grisham and Everard brought it to avoid complying with the protective order and discovery decisions made in their earlier filed case. Specifically, the Olmos Park Defendants point to Judge Bemporad's decision to limit discovery in that case to matters occurring on or before the March 27, 2018 arrests which gave rise to the litigation. According to the Olmos Park Defendants, rather than challenging Judge Bemporad's discovery decisions, Grisham and Everard brought this separate lawsuit involving their post-March 27, 2018 allegations. That may well be true, but the Olmos Park Defendants offer no reason why it is impermissible under the federal rules.

The issues in this case are different from the issues in the earlier filed case. Grisham and Everard's first case dealt with the propriety of police conduct leading up to and during their March 27, 2018 arrest. The issue before this Court is whether police improperly investigated Grisham and Everard, after their arrest, in retaliation for their protest activity. Certainly, Grisham and Everard could have sought leave to amend their complaint in the first case to include the claims asserted in this case, rather than filing a separate lawsuit. However, they are not required to do so. The plaintiff is "the master of [their] complaint." *Cody v. Allstate Fire and Casualty Ins. Co.*, 19 F.4th 712, 715 (5th Cir. 2021) (quoting *Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 366 (5th Cir. 1995)). The Court, therefore, finds it has jurisdiction over this matter and denies Defendants' Rule 12(b)(1) motion to dismiss for lack of jurisdiction.

## II.     Rule 12(c) Motion for Judgment on the Pleadings

To support their Rule 12(c) motion, the Olmos Park Defendants argue Grisham and Everard can prove no set of facts in support of their claim which would entitle them to relief. Specifically, they argue Chief Valenciano is entitled to qualified immunity because no existing precedent would put Chief Valenciano on notice his actions violated Grisham and Everard's clearly established rights. Further, they argue Grisham and Everard cannot establish the City of Olmos Park engaged in a policy, practice, or custom that deprived them of protected rights. Each of these arguments is discussed, in turn, below.

### a.  Police Chief Valenciano

In Count I of their Amended Complaint, Grisham and Everard assert a cause of action against Chief Valenciano under 42 U.S.C. § 1983, alleging he violated their constitutional rights by retaliating against them "for engaging in protected conduct." ECF No. 25 at 13:59. "Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's

rights, privileges, or immunities secured by the Constitution and laws of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). To state a claim for violation of § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States and must allege the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

Chief Valenciano does not dispute he is a state actor, however, he argues he is immune to § 1983 liability under the qualified immunity doctrine. "The doctrine of qualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 577 U.S. 7 (2015) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). "Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id*. (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). When confronted with a qualified immunity defense at the pleadings stage, the plaintiff must plead "facts which, if proved, would defeat [the] claim of immunity." *Westfall v. Luna*, 903 F.3d 534, 542 (5th Cir. 2018) (quoting *Brown v. Glossip*, 878 F.2d 871, 874 (5th Cir. 1989)).

The qualified immunity analysis consists of two steps. The first inquiry is "whether the officer's alleged conduct has violated a federal right." *Cole v. Carson*, 935 F.3d 444, 451 (5th Cir. 2019) (en banc). The second inquiry is "whether the right in question was 'clearly established' at the time of the alleged violation, such that the officer was on notice of the unlawfulness of his or her conduct." *Id*. On the second prong, "[a]n officer is entitled to qualified immunity unless all reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the United States Constitution." *Linicomn v. Hill*, 902 F.3d at 538–39 (internal quotation marks and citation omitted). The Supreme Court has

8

made clear that this does not "require a case directly on point, but existing precedent must have placed the ... constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). Courts need not decide the first question before the second, and may decide the case solely on the basis that the right was not clearly established. *Pearson v. Callahan*, 555 U.S. 223, 236–37, 243 (2009).

Grisham and Everard allege Chief Valenciano investigated them in retaliation for engaging in First Amendment protected protest activity and threatening to sue him. ECF No. 25 at 13:57, 58. The Supreme Court has recognized the First Amendment prohibits government officials from subjecting an individual to retaliatory actions for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256 (2006). However, a retaliation claim is only applicable "when non-retaliatory grounds are in fact insufficient to provoke the adverse consequences." *Id*. In this case, Chief Valenciano says his investigation was conducted for valid law enforcement purposes. Grisham and Everard offer several cases purporting to show Chief Valenciano's investigation violated clearly established law; however, none meet their burden to show, beyond debate, Chief Valenciano was on notice his investigation violated clearly established law.

Indeed, the Fifth Circuit has explicitly said an investigation is not actionable under its First Amendment retaliation jurisprudence. *See Colson v. Grohman*, 174 F.3d 498, 512 (5th Cir. 1999). The Fifth Circuit has found that "[a]lthough some actions may have … the effect of chilling [the plaintiff's] protected speech, they are not actionable." *Pierce v. Texas Dep't of Criminal Justice, Inst. Div.*, 37 F.3d 1146, 1150 (5th Cir. 1994). The *Pierce* plaintiff alleged police conducted two retaliatory investigations, for trafficking and verbal altercation. *Id*. The *Pierce* court found the investigations were not actionable under the First Amendment because "[n]either investigation resulted in any action being taken." *Id*. In *Colson v. Grohman*, the Fifth

9

Circuit found the plaintiff "alleged only that she was the victim of criticism, an investigation (or an attempt to start one), and false accusations: all harms that, while they may chill speech, are not actionable under our First Amendment retaliation jurisprudence." 174 F.3 at 512. The Court, therefore, begins with a presumption that Grisham and Everard's First Amendment retaliation claim based on Chief Valenciano's investigation is not actionable.

Grisham and Everard rely on *Keenan v. Tejeda* for the premise that "[t]he First Amendment prohibits, not only direct limits on individual speech, but adverse governmental action against an individual in retaliation for exercise of protected speech activities." ECF No. 30 at 10 (quoting *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002)). While the *Keenan* case does recognize "adverse government action" as triggering a First Amendment retaliation claim, the government action in *Keenan* is distinguishable from the government action in this case. The *Keenan* plaintiffs alleged that, in retaliation for their criticism of the constable's office, they experienced what the court described as "two disturbing incidents involving an undercurrent of violence." *Id*. at 259. In the first incident, the plaintiffs were pulled over by police and held at gunpoint, "for an inordinate period of time," and ultimately issued only a minor traffic citation that was later dismissed. *Id*. In the other, one of the plaintiffs was charged with the misdemeanor offense of "deadly conduct," under "suspicious circumstances," and only able to exonerate himself after spending thousands of dollars on his defense. *Id*. The *Keenan* court found the plaintiffs' allegations sufficient to show "a person of ordinary firmness would have been deterred by these ominous events from continuing to criticize the constable." *Id*.

The plaintiffs in this case, in contrast, allege Chief Valenciano investigated them in retaliation for their protest activities, producing in an approximately 160-page file and sharing it with other law enforcement agencies. Such an investigation does not constitute the type of

10

"disturbing" and "ominous" activities alleged by the *Keenan* plaintiffs. Furthermore, the *Keenan* court did not reach the question of whether the constable was entitled to qualified immunity, finding it was a fact issue for the trial court. *Id*. at 262. The *Keenan* case, therefore, is not sufficient Fifth Circuit authority to overcome Chief Valenciano's qualified immunity defense by putting him on notice, beyond debate, his investigation was unlawful.

Grisham and Everard go on to cite the Fifth Circuit case *Allen v. Cisneros* for the premise that "individuals who protest are protected under the First Amendment from retaliatory actions by government officials." ECF No. 30 at 10 (citing *Allen v. Cisneros*, 815 F.3d 239, 244 (5th Cir. 2016)). Like the *Keenan* case, however, the *Allen* case is distinguishable from the case at bar because the issue was whether officers impermissibly arrested and detained the plaintiff, not whether they improperly investigated him. *Id*. Moreover, the *Allen* court found the officers were entitled to qualified immunity. *Id*. So the *Allen* case cannot be used to support any qualified immunity challenge, much less in a factually distinguishable case such as this one.

Grisham and Everard further allege Chief Valenciano retaliated against them because they threatened to sue him, and then did sue him in federal court. The Fifth Circuit in *Crowder v. Sinyard* recognized that "courts have held that if state officials in some way retaliate against an individual for seeking redress through the courts, they have violated that person's right of access to the courts." 884 F.2d 804, 813 n. 9 (5th Cir. 1989), *cert. denied*, 496 U.S. 924 (1990), *overruled on other grounds*, *Horton v. California*, 496 U.S. 128, 110 (1990). The *Crowder* court described the right of access to the courts as a "facilitative" right: "In its most obvious and formal manifestation, the right protects one's physical access to the courts." *Id*. at 811, 814. The Fifth Circuit, however, has distinguished this facilitative right to access the courts from a right to

be free from retaliatory actions inspired by, but separate from, litigation—such as an investigation.

In *Hale v. Townley*, the Fifth Circuit considered whether a qualified immunity defense was available to officers accused of improperly investigating the plaintiff after he successfully sued the police department. 45 F.3d 914, 920 (5th Cir. 1995), *abrogated on other grounds*, *Kingsley v. Hendrickson*, 576 U.S. 389, 395–97 (2015). The *Hale* court held that, at the time of the conduct at issue, the constitutional tort of retaliation against an individual for filing a lawsuit was "not so clearly established" that a reasonable official would understand that actions taken with this intent violated the First Amendment. *Id*. Grisham and Everard do not identify any subsequent authority establishing such a violation, and this Court has found none.

The Court, therefore, finds Grisham and Everard have failed to meet their burden to show, beyond debate, "all reasonable officials" in the Chief Valenciano's circumstances would have known his investigation was unconstitutional. *Linicomn v. Hill*, 902 F.3d at 538–39; *Ashcroft v. al-Kidd*, 563 U.S. at 741. Thus, the Court finds Chief Valenciano is entitled to qualified immunity.

**b. City of Olmos Park**

Grisham and Everard further allege the City of Olmos Park is liable under § 1983 for Chief Valenciano's conduct because the city was aware, approved, or acted with deliberate indifference to Chief Valenciano's conduct. ECF No. 25 at 13:61–14:65. A municipality is responsible only for its own illegal acts and cannot be held liable on a *respondeat superior* theory of recovery under § 1983. *Connick v. Thompson*, 563 U.S. 51, 60 (2011); *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 691, 694 (1978). Consequently, when a plaintiff asserts a cause of action against a municipality for violation of § 1983, the

alleged deprivation of constitutional rights must be connected to an official custom, policy, practice, ordinance, or regulation. *Monell,* 436 U.S. at 690–94; *Jones v. Lowndes County, Miss.,* 678 F.3d 344, 349 (5th Cir. 2012); *Flores v. Cameron County,* 92 F.3d 258, 263 (5th Cir. 1996). Thus, to survive a Federal Rule 12(c) challenge to a claim of municipal liability under § 1983, a plaintiff must allege: "(1) a policymaker, (2) an official policy, and (3) a violation of constitutional rights whose moving force is the policy or custom." *Horvath v. City of Leander*, 946 F.3d 787, 793 (5th Cir. 2020). Courts recognize three ways to show an "official policy": (1) "written policy statements, ordinances, or regulations"; (2) a "widespread practice that is so common and well-settled as to constitute a custom that fairly represents" the city's policy; or (3) under "rare circumstances," a single act can be considered a policy if done by an official or entity with "final policymaking authority." *Webb v. Town of Saint Joseph*, 925 F.3d 209, 214 (5th Cir. 2019) (citations and quotations omitted).

Here, Grisham and Everard fail to allege sufficient facts establishing the City of Olmos Park's "policy or custom" of discriminating against gun rights activists. In Count II of their Amended Complaint, Grisham and Everard allege the actions of Chief Valenciano and the city "demonstrate a policy, practice, or custom to retaliate against Plaintiffs and other open carry activists for engaging in their protected First Amendment activity." ECF No. 25 at 13:61. In their factual allegations, they allege "Olmos Park, by and through its policymakers, Chief Valenciano, City Manager Celia DeLeon, the Mayor and City Council created and adopted a policy of targeting individuals that exercised their First Amendment rights…" ECF No. 25 at 2:5. Such conclusory statements, without specific factual allegations to support them, fail to meet the plaintiffs' pleading burden. *See Bell Atl. Corp. v. Twombly*, 550 U.S. at 555. Grisham and Everard do not allege the city adopted "written policy statements, ordinances, or regulations"

evidencing its policy of discrimination, nor do they allege the city adopted a widespread practice "so common and well-settled as to constitute a custom that fairly represents" the city's policy. *Webb v. Town of Saint Joseph*, 925 F.3d at 214. Chief Valenciano's investigation of gun rights activists, without more, does not rise to the level of a city-wide policy or custom. Furthermore, referring to Chief Valenciano as a "policymaker" is insufficient to establish the "rare" case where a single act by an official with "final policymaking authority" becomes municipal policy. *Webb v. Town of Saint Joseph*, 925 F.3d at 214. Overcoming the Olmos Park Defendants' challenge requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555. The Court, therefore, finds Grisham and Everard fail to allege sufficient facts to establish a *Monell* claim against the city.

Grisham and Everard allude to causes of action for the city's negligent training and ratification by alleging the city "showed a deliberate indifference and ratified Chief Valenciano's conduct." ECF No. 25 at 24:65. However, such conclusory statements, without more, are insufficient to meet the plaintiffs' pleading burden. The Court, therefore, grants the defendants' Rule 12(c) challenge as to the City of Olmos Park.

## CONCLUSION

For the reasons discussed, the Court **DENIES** the Defendants' Motion to Dismiss, **GRANTS** the Defendants' Motion for Judgment on the Pleadings (ECF No. 29), and **DISMISSES** this case with prejudice. Final judgment will be entered by separate order.

It is so ORDERED.
SIGNED this 20th day of January, 2023.

JASON PULLIAM
UNITED STATES DISTRICT JUDGE